# United States Court of Appeals

*for the*

# Fourth Circuit

THOMAS NAVARRO; JAMES GIORGIO; NINA SHAFFER,

*Plaintiffs-Appellants,*

— v. —

UNITED STATES CENTER FOR SAFESPORT; UNITED STATES OLYMPIC
& PARALYMPIC COMMITTEE; UNITED STATES EQUESTRIAN
FEDERATION, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA AT CHARLOTTESVILLE

## AMENDED OPENING BRIEF OF APPELLANTS

TAMARA L. TUCKER
WILLIAM C. TUCKER
TUCKER LAW FIRM, PLC
690 Berkmar Circle
Charlottesville, Virginia 22901
(833) 388-2537
*Attorneys for Plaintiffs-Appellants*

 (800) 4-APPEAL • (812345)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-1150__      Caption: _Navarro et al v. United States Center for SafeSport_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Thomas Navarro_
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Tamara L. Tucker

Date: 2/28/25

Counsel for: Thomas Navarro

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-1150_      Caption: _Navarro et al v. United States Center for SafeSport_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_James Giorgio_
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                  ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?      ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?      ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Tamara L. Tucker                                    Date:            2/28/25

Counsel for: James Giorgio

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>25-1150</u>        Caption: <u>Navarro et al v. United States Center for SafeSport</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Nina Shaffer</u>
(name of party/amicus)

_____

who is _____<u>Appellant</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                              ☐YES ☑NO
        If yes, identify all such owners:




12/01/2019 SCC                          - 1 -

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Tamara L. Tucker         Date: 2/28/25

Counsel for: Nina Shaffer

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF ISSUES ............................................................................ 2

STATEMENT OF THE CASE ....................................................................... 3

STANDARD OF REVIEW .......................................................................... 11

SUMMARY OF ARGUMENT .................................................................... 12

ARGUMENT ............................................................................................... 14

      I.     The Amateur Sports Act Unconstitutionally Delegates
           Federal, Legislative, Executive, Administrative and
           Enforcement Authority to the Center ................................... 14

      II.    The District Court Erred in Dismissing the Due Process
           Counts on the Grounds that the Center, USOPC and USEF
           are not Governmental Actors ............................................... 22

           A.    Count V of the Complaint states a claim upon which
                  relief may be granted ............................................... 23

           B.    Count VI of the Complaint states a claim upon which
                  relief may be granted ............................................... 26

      III.   Shaffer was not Required to Exhaust Administrative
           Remedies .............................................................................. 31

      IV.   The Complaint Alleges Article III Standing as to USOPC ................ 32

CONCLUSION ............................................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*A.L.A. Schechter Poultry Corp. v. United States*,
    295 U.S. 495, 55 S. Ct. 837, 79 L. Ed. 1570 (1935) ............................ 18, 20

*Adams v. Bain*,
    697 F.2d 1213 (4th Cir. 1982) ......................................................12

*Carter v. Carter Coal Co.*,
    298 U.S. 238, 56 S. Ct. 855, 80 L. Ed. 1160 (1936) ............................ 18, 20

*Cox v. N. Va. Transp. Comm'n*,
    551 F.2d 555 (4th Cir. 1976) ......................................................26

*Currin v. Wallace*,
    306 U.S. 1, 59 S. Ct. 379, 83 L. Ed. 441 (1939) .........................................18

*Debauche v. Trani*,
    191 F.3d 499 (4th Cir. 1999) ......................................................28

*Eberhardt v. Fairfax County Employees' Ret. Sys. Bd.*,
    Civ. Act. No. 1:10-cv-771 (E.D. Va. Mar. 30, 2012)...................................25

*Edmonson v. Leesville Concrete Co.*,
    500 U.S. 614 (1991)........................................................ 14, 26, 27

*GE Investment Private Placement Partners II v. Parker*,
    247 F.3d 543 (4th Cir. 2001) ......................................................11

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) ...........................11

*Hishon v. King Spalding*,
    467 U.S. 69, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984) .................................11

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)................................................................27

*Mathews v. Eldridge*,
    424 U.S. 319 (1976).......................................................... 14, 31

*McDonald v. Centra*,
    946 F.2d 1059 (4th Cir. 1991) ......................................................31

*Mylan Labs., Inc. v. Matkari*,
    7 F.3d 1130 (4th Cir. 1993) ..........................................................................11

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
    53 F.4th 869 (5th Cir. 2022) ...................................... 13, 18, 19, 28

*Paul v. Davis*,
    424 U.S. 693 (1976).................................................................... 24, 25

*Pittston Co. v. U.S.*,
    368 F.3d 385 (4th Cir. 2004) .................................................. 12, 14, 15

*Pond v. United States*,
    69 F.4th 155 (4th Cir. 2023) ........................................................12

*S. F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
    483 U.S. 522 (1987).....................................................................29

*Sciolino v. City of Newport News*,
    480 F.3d 642 (4th Cir. 2007) ........................................................26

*State v. U.S.*,
    62 F.4th 221 (6th Cir. 2023) .............................. 19, 20, 21, 28

*Spinelli v. City of New York*,
    579 F.3d 160 (2d Cir. 2009) .........................................................34

*Sunshine Anthracite Coal Co. v. Adkins*,
    310 U.S. 381, 60 S. Ct. 907, 84 L. Ed. 1263 (1940) ............................ 18, 20

*Thurston v. Roanoke School Bd.*,
    26 F. Supp. 2d 882 (W.D. Va. 1998).................................................25

*Wieman v. Updegraff*,
    344 U.S. 183 (1952).....................................................................25

*Wisconsin v. Constantineau*,
    400 U.S. 433 (1971)......................................................................24

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61 (2d Cir. 2003) ...........................................................34


**Statutes & Other Authorities:**

U.S. Const. Amend V........................................................................ 22, 23

U.S. Const. Amend VI ...................................................................22

28 U.S.C. § 1291 ..........................................................................2

28 U.S.C. § 1331 ..........................................................................1

28 U.S.C. § 1367 ........................................................................34

28 U.S.C. §§ 2201-2202 ................................................................1

36 U.S.C. § 220501 ..................................................................1, 3

36 U.S.C. § 220505(d)(1)(C) .......................................................32

36 U.S.C. § 220522 ............................................................ 7, 32-33

36 U.S.C. § 220522(7) ................................................................25

36 U.S.C. § 220522(8) ......................................................... *passim*

36 U.S.C. § 220522(a)(8) ..............................................................7

36 U.S.C. § 220524 ............................................................. *passim*

36 U.S.C. § 220527 ............................................................. *passim*

36 U.S.C. § 220541(a)(1)-(2) .......................................................15

36 U.S.C. § 220541(a)(1)(A) ........................................................15

36 U.S.C. § 220541(a)(1)(A)-(B) ...................................................5

36 U.S.C. § 220541(a)(1)(C) ........................................ 13, 16, 17, 33

36 U.S.C. § 220541(a)(1)(D) ........................................................17

36 U.S.C. § 220541(a)(1)(D)-(E) ...................................................5

36 U.S.C. § 220541(a)(1)(F)(ii) ....................................................17

36 U.S.C. § 220541(a)(1)(G) ........................................................17

36 U.S.C. § 220541(a)(1)(h) ..........................................................6

36 U.S.C. § 220541(a)(1)(H) ........................................................16

36 U.S.C. § 220541(a)(3) .............................................................16

36 U.S.C. § 220541(a)(4) .............................................................16

36 U.S.C. § 220541(a)(F)(i) .........................................................24

36 U.S.C. § 220541(b) ........................................................ *passim*

36 U.S.C. § 220543(b) ....................................................................6

36 U.S.C. § 225041(a)(5) ...............................................................23

36 U.S.C. § 2202522 .......................................................................7

36 U.S.C. § 2202529 .......................................................................7

Rule 12(b)(1) .................................................................................12

Rule 12(b)(6) ...........................................................................11, 12

# JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case presents claims arising under the United States Constitution and federal statutes and under 28 U.S.C. §§ 2201-2202 because an actual controversy exists among the parties.

In their Complaint, Appellants Thomas Navarro, James Giorgio, and Nina Shaffer challenged portions of the Ted Stevens Olympic and Amateur Sports Act (the "ASA"), 36 U.S.C. § 220501, *et seq.*, which, among other things, unconstitutionally delegates federal legislative, executive and enforcement authority to a private entity to govern Plaintiffs and others participating in Olympic and amateur sports. JA9.

Navarro, Giorgio, and Shaffer also challenged the United States Center for SafeSport's (the "Center" or "SafeSport") policies and practices, which have caused each of them harm, on the grounds that such policies and practices violate the Center's statutory authority and violate their rights to due process under the Fifth Amendment to the United States Constitution as well as certain statutory rights under the ASA. JA9. Navarro, Giorgio, and Shaffer also challenged the enforceability of their membership agreements with the United States Equestrian Federation ("USEF"), specifically the unconscionable provisions requiring them to submit to the Center's unlawful policies and procedures. JA10.

The District Court entered an Order and Final Judgment on January 15, 2025. JA608. On February 12, 2025, Navarro, Giorgio and Shaffer timely filed a Notice of Appeal to this Court. JA609. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Whether the Ted Stevens Amateur and Olympic Sports Act unconstitutionally delegates federal legislative, executive, administrative and enforcement authority to the United States Center for SafeSport.

2. Whether the District Court erred in dismissing the due process counts on the grounds that the Center, USOPC and USEF are not governmental actors.

3. Whether the District Court erred in dismissing Shaffer's claims for failing to exhaust administrative remedies.

4. Whether the District Court erred when it dismissed the claims against USOPC for lack of subject matter jurisdiction.

STATEMENT OF THE CASE

In 1978, Congress passed the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C.§ 220501 *et seq*., (the "ASA") which tasked the United States Olympic & Paralympic Committee ("USOPC") with the responsibility for governing the Olympic Movement in the United States. JA13. Under the statutory framework of the ASA, the USOPC recognizes a National Governing Body ("NGB") for each Olympic sport, and each NGB is a member of the USOPC. JA14.

The USOPC began the process of creating the United States Center for SafeSport (herein the "Center" or "SafeSport") as an entity within its authority sometime prior to 2011. JA14. On December 5, 2014, USOPC incorporated the Center with a principal office address of One Olympic Plaza, Colorado Springs, Colorado (the same address as USOPC). JA15. Thereafter, the USOPC formed a working group with NGBs to draft policies and procedures governing emotional, physical and sexual abuse, including the complaint, investigation, and adjudication process for claims of emotional, physical and sexual abuse. JA15-16. During the course of drafting what would become the rules and regulations promulgated by the Center (the "SafeSport Code"), officials at USOPC circulated to the NGBs a draft that did not provide for a hearing before SafeSport issued a final decision on a participant's eligibility. JA16. The United States Equestrian Federation's ("USEF") General Counsel recognized the conflict between the draft SafeSport Code's failure

to provide a hearing before SafeSport issued a final decision, and the ASA's statutory requirement that NGBs provide a hearing before ruling on a Participant's[1] eligibility contained in 36 U.S.C. § 220522(8). JA16. USEF's General Counsel raised this issue to the working group leader via email. She specifically pointed out that under the SafeSport Code, Participants would be deprived of a hearing that they are afforded in every other context of sport, including anti-doping cases that are adjudicated through USADA. JA16. Despite being aware of the NGB's statutory requirement to provide a pre-determination hearing to Participants, the USOPC did not include a pre-determination hearing in the SafeSport Code. JA16. The original SafeSport Code became effective on March 3, 2017. JA16. At that time, SafeSport matters were still under the jurisdiction of USOPC, and the USOPC required all NGBs to agree to the SafeSport Code. JA17.

In March 2018, Congress passed the United States Center for Safe Sport Authorization Act of 2018 (the "2018 Amendment"), which amended the ASA in several respects. The 2018 Amendment made SafeSport independent from USOPC and gave SafeSport considerable legislative, regulatory, administrative, and enforcement powers. JA19. The 2018 Amendment declared that SafeSport "shall … serve as the independent national safe sport organization and be recognized

---

[1] Participant is defined, in pertinent part, as any individual who is seeking to be, currently is, or was at the time of any alleged Code violation, a member or license holder of an NGB, LAO, or the USOPC. JA165.

worldwide as the independent national safe sport organization for the United States," and "exercise jurisdiction over the [USOPC], each national governing body, and each paralympic sports organization with regard to safeguarding athletes against abuse, including emotional, physical, and sexual abuse, in sports." 36 U.S.C. § 220541 (a)(1)(A)-(B). JA19. The 2018 Amendment also provided broad regulatory and enforcement powers to the Center, including mandating that the Center shall "maintain an office for response and resolution that shall establish mechanisms that allow for the reporting, investigation, and resolution … of alleged sexual abuse in violation of the Center's policies and procedures," and "ensure that the [these] mechanisms … provide fair notice and an opportunity to be heard …." 36 U.S.C. § 220541(a)(1)(D)-(E). JA19.

Congress not only gave federal regulatory and enforcement authority to the Center, but also gave it federal legislative authority. JA19. The 2018 Amendment provides that the policies and procedures in the SafeSport Code "shall apply as though they were incorporated in and made a part of section 220524 of this title." 36 U.S.C. § 220541(b). JA19-20. Thus, SafeSport's policies are codified in 36 U.S.C. § 220524. JA20. This incorporation into federal law occurs each time SafeSport makes, sets, revises or amends its policies and procedures (i.e., the SafeSport Code) without ever being reviewed by Congress or any federal agency. JA20. Congress granted federal legislative and executive authority to the Center, but it didn't provide

for any oversight of the Center's activities by a federal administrative agency or department of the Executive Branch. JA20. The only oversight of the Center is minimal oversight by the Government Accounting Office ("GAO"), which is an independent agency created by Congress to assist Congress, and the GAO's oversight only pertains to fiscal issues and ensuring the Center remains independent from the USOPC and NGBs. JA20. The only other oversight called for in the 2018 Amendment is a requirement that Center "submit an annual report to Congress." 36 U.S.C. § 220543(b). JA20. Finally, in the 2018 Amendment, Congress explicitly required that SafeSport publicly identify persons barred by the Center on its website. JA20.

In 2020, Congress passed the Empowering Olympic and Amateur Athletes Act of 2020, which amended the ASA in several respects. JA21. Under the 2020 Amendment, Congress added § 220541(a)(1)(h), which requires the Center to provide "procedural due process" to an accused Participant in every step of its investigation and resolution process. JA21. The Center revised and/or amended the SafeSport Code effective April 15, 2019. JA21. SafeSport revised and/or amended the SafeSport Code effective April 1, 2020. JA21. SafeSport revised and/or amended the SafeSport Code in 2021-2023. JA22. None of these revisions included any participation or oversight by Congress or any federal agency, or an opportunity for public comment or participation in the rule changing process. JA22. None of these

revisions changed the procedures to provide a hearing to Participants before issuing a final decision. JA22.

The ASA sets forth specific eligibility criteria and conditions that an entity must meet to serve as an NGB. 36 U.S.C. § 220522.[2] JA14. From its inception, the eligibility criteria included the requirement that an NGB provide both "notice and a hearing" before declaring members of the Olympic movement ineligible to participate. 36 U.S.C. § 220522(8). JA14. The ASA also sets forth an NGB's federally mandated duties in 36 U.S.C. § 220524. In addition to the enumerated duties found in § 220524, Congress has incorporated the entire SafeSport Code into the ASA through the language found in 36 U.S.C. § 220541(b). JA20.

If an NGB violates the provisions of 36 U.S.C. §2202522 or §220524, its members can bring a complaint (commonly referred to as a Section 10 Complaint) under 36 U.S.C. § 220527 for failing to comply with those statutes. A Section 10 Complaint is heard and decided by the USOPC. 36 U.S.C. § 220527. A party aggrieved by a decision of the USOPC under 36 U.S.C. § 2202527 may obtain review through arbitration. 36 U.S.C. § 2202529.

---

[2] (The ASA was reorganized such that current § 220522(8) was formerly § 220522(a)(8), including at the time that s Navarro and Giorgio were denied both notice and a hearing. The reorganization did not change the operative language in the statute. For purposes of clarity, references herein to § 220522(8) also include the former § 220522(a)(8) if appropriate.)

Since 1978, the number of athletes in the Olympic Movement has grown exponentially and includes hundreds of thousands of amateur athletes who have no Olympic aspirations or chance at competing at the Olympic level. JA13. The United States Equestrian Federation ("USEF") alone boasts a membership of approximately 150,000 members, many of whom earn their living as professionals but many of whom are simply horse owners, fans of the sport, and other non-riding participants. JA11-14.

Thomas Navarro is a horse professional and at all times relevant herein was eligible to be a member of USEF. JA11. Navarro earns his living teaching equestrians and training horses. JA11. Navarro was ruled ineligible to participate in USEF events in a final decision by SafeSport. JA11. USEF is enforcing SafeSport's final decision. JA11. The first notice Navarro received was the email banning him at the same time the ban with his name was published on the Center's website pursuant to the ASA. JA12. Thus, he received neither notice nor any opportunity to be heard prior to the Center's final decision in his case. JA12.

James Giorgio is a contractor who owns and breeds Morgan horses, which are competed and sold. JA12. Their value is determined, in part, by their competition record. JA12. Prior to July 21, 2018, Giorgio's horses regularly competed at USEF sanctioned horse shows, thereby increasing their value and marketability. JA12. Giorgio regularly attended USEF sanctioned horse shows until July 21, 2018, at

which time USEF permanently banned him as a result of a decision by SafeSport. JA12. Like Navarro, Giorgio was permanently banned with his name published on the SafeSport website prior to receiving notice or a hearing. JA12. In the email to Giorgio stating that the ban was immediate, USEF informed Giorgio that he could request an arbitration hearing at the cost of nearly $6,000.00. JA12.

Nina Shaffer is a horse professional who earns her living teaching equestrians and training horses. JA12. Shaffer was investigated by SafeSport for alleged emotional abuse under SafeSport's "Discretionary Jurisdiction." JA12. On February 26, 2024, SafeSport issued a three (3) month suspension to Shaffer prohibiting her from participating in USEF events. JA13. SafeSport also placed Shaffer on a nine (9) month probation following her suspension and issued other penalties. JA13. USEF enforced the suspension and other penalties issued by the SafeSport against Shaffer. JA13. SafeSport also published Shaffer's name on its website. JA13. Pursuant to the SafeSport Code, the only procedure available to Shaffer was a post-determination arbitration for which she was required to pay $5,200.00. Shaffer could not afford the arbitration fee. JA13.

At the time Navarro, Giorgio, and Shaffer entered into their membership agreements with USEF, Bylaw 102 of the USEF Bylaws provided that USEF "shall protect the **right** of an athlete, coach, trainer, manager, administrator, or official to participate in athletic competitions in equestrian events." (Emphasis added). JA13.

In August 2019, pursuant to 36 U.S.C. § 220527, Navarro and Giorgio, as well as other participants, filed a Section 10 complaint against USEF alleging that it was violating the ASA, specifically 36 U.S.C. § 220522(8), because its members were being declared ineligible prior to being afforded a hearing. JA24. The Section 10 complaint was first dismissed by a USEF Hearing Panel on the grounds that USEF lacked jurisdiction. JA53. The Section 10 case was then appealed to the USOPC, and the USOPC Hearing Panel also found that it lacked jurisdiction over the subject matter. JA52-53. Ultimately, a Panel of three AAA arbitrators heard the matter and while also finding that they lacked jurisdiction to rule on the Section 10 complaint, they issued a comprehensive opinion including the following:

> As discussed in the analysis above, Claimants clearly have a valid procedural due process claim to adjudicate and this Panel agrees that Claimants could prevail when this conflict of law issue is eventually addressed in federal court.

> The USOPC and [SafeSport] efforts to diminish or minimize this right to procedural due process has been set up for a rebuke by a federal court since the passage and implementation of the original version of the SafeSport Code in 2017 … In the meantime, hundreds of accused Olympic Participants may continue to be inappropriately deprived of a legal right to a PDH in their cases.

JA48-67.

After the Final Award was issued by the AAA Panel, Navarro, Giorgio, and Shaffer filed a Complaint for Declaratory and Injunctive Relief in the United States District Court for the Western District of Virginia on April 28, 2024. JA9-67. USEF,

USOPC, and the Center filed Motions to Dismiss, which were heard by the District Court on December 5, 2024. JA508-570. In a Memorandum Opinion, the District Court granted the Motions to Dismiss with prejudice on Counts I-VI, declined supplemental jurisdiction as to Count VII, and dismissed that count without prejudice. JA571-607. The District Court entered an Order and Final Judgment on January 15, 2025. JA608. On February 12, 2025, Navarro, Giorgio and Shaffer filed a Notice of Appeal to this Court. JA609.

## STANDARD OF REVIEW

The standard of review for the District Court's dismissal of the Complaint under Rule 12(b)(6) is *de novo*. *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001)(on a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993)). A motion to dismiss for failure to state a claim for relief should not be affirmed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

Likewise, the standard of review for the District Court's dismissal of the Complaint under Rule 12(b)(1) is *de novo*. *Pond v. United States*, 69 F.4th 155, 160-61 (4th Cir. 2023); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (where defendant argues "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based . . . the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.").

## SUMMARY OF ARGUMENT

The Congressional delegation of authority to the Center violates the nondelegation doctrine because Congress has granted to the Center sweeping rulemaking and enforcement authority over other private entities and hundreds of thousands of individual amateur athletes, trainers, coaches, and other officials. The Center is not limited to performing ministerial or advisory functions. "Congress may employ private entities for *ministerial* and *advisory* roles, but it may not give these entities governmental power over others." *Pittston Co. v. U.S.*, 368 F.3d 385, 395 (4th Cir. 2004) (Emphasis in original).

In addition, the Congressional delegation of authority to the Center in the ASA violates the nondelegation doctrine because the Center is a private entity that exercises its broad authority with no governmental oversight. "A cardinal constitutional principle is that federal power can be wielded only by the federal

government. Private entities may do so only if they are subordinate to an agency." *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,* 53 F.4th 869, 872 (5th Cir. 2022).

Further, Congress mandated that "[t]he policies and procedures developed under subsection § 220541(a)(1)(C) shall apply as though they were incorporated in and made a part of section 220524 of this title." 36 U.S.C. § 220541(b). Thus, the SafeSport Code, in its entirety, has been incorporated into and made a part of the ASA.

The ASA deprives participants of protected liberty and property interests without providing due process protections. The ASA mandates that the Center publish the names of those "barred by the Center" on the World Wide Web and affect a change in the status of a participant's eligibility. These actions are taken by the Center without a pre-determination hearing. In the cases of Navarro and Giorgio, these actions were taken without given notice of allegations or a pending investigation. As a result of the broad grants of governmental authority delegated to the Center by Congress in the ASA, the Center's actions and decisions are subject to the Fifth Amendment's requirements of Due Process. "Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to

constitutional constraints." *Edmonson v. Leesville Concrete Co*., 500 U.S. 614, 620 (1991).

Shaffer was not required to exhaust administrative remedies for her claims brought under the Constitution and seeking a judicial interpretation of federal statutes because the claims are not within the jurisdiction granted to the Center under the ASA. A litigant is not required to exhaust administrative remedies within an administrative agency for claims that are "entirely collateral to the substantive claims" at issue before the agency. *Mathews v. Eldridge*, 424 U.S. 319, 330-31 (1976).

Article III standing exists as to USOPC. The ASA obligates the USOPC to enforce the requirements and duties of NGBs, including the obligations and duties within the SafeSport Code. One of the USOPC's express duties set forth by Congress is to "ensure that each national governing body and the corporation enforces temporary measures and sanctions issued pursuant to the authority of the Center." 36 U.S.C. § 220505(d)(1)(C). Congress also set forth specific duties and requirements for NGBs in 36 U.S.C. §§ 220522 and 220524. Among these obligations, Congress requires that NGB's provide notice and a hearing before declaring a member ineligible. JA14, 36 U.S.C. § 220522(8).

ARGUMENT

I.  The Amateur Sports Act Unconstitutionally Delegates Federal, Legislative, Executive, Administrative and Enforcement Authority to the Center.

The Congressional delegation of authority to the Center violates the nondelegation doctrine because the Center is not limited to performing ministerial or advisory functions. "Congress may employ private entities for *ministerial* and *advisory* roles, but it may not give these entities governmental power over others." *Pittston Co. v. U.S.*, 368 F.3d 385, 395 (4th Cir. 2004) (Emphasis in original). In *Pittston*, a private entity, the Combine Fund, was tasked by Congress with collecting premiums from coal operators that were used to pay benefits for coal miners. The statute at issue in that case determined the nature of the retiree's benefit and its amount, and the Social Security Commissioner, not the Combined Fund, computed the amount of the premium payable by a coal company for this purpose, based on the number of retirees assigned to the coal operator and the benefits payable to them. Thus, this Court held that the Congressional delegation of authority to the Combined Fund was constitutional because, "[i]n this scheme, the Coal Act, in essence, leaves to the private entity only the administrative tasks of collecting the premiums, preserving them for the benefit of beneficiaries, and using them to provide the beneficiaries with the benefits specified in the Coal Act." *Pittston Co. v. U.S.*, 368 F.3d 385, 398 (4th Cir. 2004).

Unlike the Combined Fund in *Pittston*, Congress has granted to the Center sweeping rulemaking and enforcement authority over other private entities and hundreds of thousands of individual amateur athletes, trainers, coaches, and other officials. The ASA declares the Center to be "the independent national safe sport organization for the United States," 36 U.S.C. § 220541(a)(1)(A), with the authority to:

- exercise *jurisdiction* over the [USOPC], [and] each national governing body … with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports; 36 U.S.C. § 220541(a)(1)-(2) (Emphasis added).

- exercise *jurisdiction* over and *take action against* individual participants in the Olympic Movement; 36 U.S.C. § 220541(a)(1)(H) (Emphasis added).

- develop training, oversight practices, policies, and procedures to prevent the abuse, including emotional, physical, and sexual abuse, of amateur athletes participating in amateur athletic activities through national governing bodies and paralympic sports organizations; 36 U.S.C. § 220541(a)(3).[3]

_____

[3] According to the Center's website, the "policies and procedures" developed by the Center include the SafeSport Code and "apply to U.S. Olympic and Paralympic Movement organizations and affiliated individuals, based on the Center's authority

16

- establish mechanisms that allow for the reporting, investigation, and resolution … of alleged sexual abuse. 36 U.S.C. § 220541(a)(4).

Congress also requires that the Center:

- maintain an office for education and outreach that shall develop training, oversight practices, policies, and procedures to prevent the abuse, including emotional, physical, and sexual abuse, of amateur athletes participating in amateur athletic activities through national governing bodies; 36 U.S.C. §220541(a)(1)(C)

- maintain an office for response and resolution that shall establish mechanisms that allow for the reporting, investigation, and resolution, pursuant to subsection (c), of alleged sexual abuse in violation of the Center's policies and procedures; 36 U.S.C. § 220541(a)(1)(D)

- maintain an office for compliance and audit that shall ensure that the NGB's and the USOPC implement and follow the SafeSport Code developed by the Center; 36 U.S.C. § 220541(a)(1)(F)(ii)

---

established by federal law. https://uscenterforsafesport.org/response-and-resolution/policies-and-procedures.

- publish and maintain a publicly accessible internet website that contains a comprehensive list of adults who are barred by the Center. 36 U.S.C. § 220541(a)(1)(G).

Finally, Congress mandated that "[t]he policies and procedures developed under subsection § 220541(a)(1)(C) shall apply as though they were incorporated in and made a part of section 220524 of this title." 36 U.S.C. § 220541(b). Thus, the SafeSport Code, in its entirety, is incorporated into and made a part of the ASA by federal statute, and NGBs are obligated as a matter of federal law to adhere to it, implement it, and enforce it against their members. Because the Center's authority goes well beyond ministerial and advisory functions, the delegation of authority to the Center under the ASA is unconstitutional.

In addition, the Congressional delegation of authority to the Center in the ASA violates the nondelegation doctrine because the Center is a private entity that exercises its broad authority with no governmental oversight. "A cardinal constitutional principle is that federal power can be wielded only by the federal government. Private entities may do so only if they are subordinate to an agency." *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,* 53 F.4th 869, 872 (5th Cir. 2022) (citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 537, 55. S.Ct. 837, 79 L.Ed. 1570 (1935); *Carter v. Carter Coal Co.*, 298 U.S. 238, 311, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *Currin v. Wallace*, 306 U.S. 1, 15-16, 59 S.Ct.

379, 83 L.Ed. 441 (1939); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940). The litigation and legislative history of the Horseracing Integrity and Safety Act ("HISA") illustrates the type of government oversight that meets the requirements of the Constitution. HISA is the statute that nationalized governance of the thoroughbred horseracing industry. Like the ASA empowered the Center, HISA empowered a private entity called the Horseracing Integrity and Safety Authority (the "Horseracing Authority") within the horseracing industry. Unlike the ASA, however, the Horseracing Authority operated under limited oversight by the Federal Trade Commission ("FTC"). Even though HISA provided for some governmental oversight by the FTC, the Fifth Circuit found the delegation of authority to the Horseracing Authority violated the nondelegation doctrine because the Horseracing Authority was given "final say" over HISA's programs such that the FTC was subordinate to the Horseracing Authority. The court noted:

> HISA restricts FTC review of the [Horseracing] Authority's proposed rules. If those rules are "consistent" with HISA's broad principles, the FTC *must* approve them. And even if it finds inconsistency, the FTC can only suggest changes. What's more, the FTC concedes it cannot review the [Horseracing] Authority's policy choices. When the public has disagreed with those policies, the FTC has disclaimed any review and instead told the public to "engage with the [Horseracing] Authority." An agency does not have meaningful oversight if it does not write the rules, cannot change them, and cannot second-guess their substance. As the district court correctly put it: "Only an Act of Congress could permanently amend any [Horseracing] Authority rule or divest it of its powers."

19

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,* 53 F.4th 869, 872 (5th Cir. 2022) (internal citation omitted)(italics in original). Ultimately, the Fifth Circuit found, "The end result is that Congress has given a private entity the last word over what rules govern our nation's thoroughbred horseracing industry. The Constitution forbids that." *Id.*

After the Fifth Circuit ruling in *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, Congress amended HISA to give the FTC greater oversight and policy making powers over the Horseracing Authority, and the amended statute was found constitutional by the Sixth Circuit in *State v. U.S.*, 62 F.4th 221, 227 (6th Cir. 2023). The Sixth Circuit found that "[t]he amendment eliminated the FTC's interim-rule authority and instead gave sweeping power to the FTC to create rules that 'abrogate, add to, and modify the rules of the [Horseracing] Authority.'" *Id.* The Sixth Circuit interpreted Supreme Court opinions for the following rule: "[A] private entity may aid a public federal entity that retains authority over the implementation of federal law. But if a private entity creates the law or retains full discretion over any regulations … that is an unconstitutional exercise of federal power." *Id.* at 228-29 (citing *Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 388, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); *Carter v. Carter Coal Co.*, 298 U.S. 238, 311, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 537, 55. S.Ct. 837, 79 L.Ed. 1570 (1935)). As a result, the Sixth Circuit held:

Before the amendment, the Fifth Circuit determined that the FTC could not question the Horseracing Authority's policy choices or modify its rules. It followed that the [Horseracing] Authority, a private entity beyond public control, alone was responsible for the exercise of government power in the area. Not so anymore.

*Id.* at 230-31. Accordingly, because "[HISA's] amended text gives the FTC ultimate discretion over the content of the rules that govern the horseracing industry and the Horseracing Authority's implementation of those rules," the Sixth Circuit held that the limited delegation of authority with government oversight in the amended HISA was constitutional.

In addition, the Sixth Circuit found that the amendments to HISA also cured any constitutional issues related to the grant of enforcement authority to the Horseracing Authority without any governmental oversight. The following excerpt from the Sixth Circuit's opinion is directly on point for the issues presented by the delegation of authority to the Center in the ASA at issue in the present case:

Take an example to illustrate the point. Imagine that the Horseracing Authority began enforcing its rule without giving thought to the procedural rights of jockeys, trainers, and other industry participants. Section 3053(e) gives the FTC the tools to step in. … The FTC could require that the Authority provide a suspect with a full adversary proceeding and with free counsel. … In these ways as well as others, the FTC may control the Authority's enforcement activities to ensure that the FTC, not the Authority, ultimately decides how the Act is enforced.

*State v. U.S.*, 62 F.4th 221, 231 (6th Cir. 2023). The Sixth Circuit also cited that the FTC had "full authority to review the Horseracing authority's enforcement actions,"

and to reverse the Authority's decisions after an independent review. *Id*. at 231. As a result, the Sixth Circuit held: "As with rulemaking, so with adjudication: the Authority's adjudication decisions are not final until the FTC has the opportunity to review them." *Id*.

In contrast to the government oversight of the private entity provided for in HISA, under the Congressional delegation of rulemaking and enforcement authority to the Center in the ASA, the Center answers to no one. Not only has Congress failed to provide for any oversight from any governmental entity with any "say," let alone "final say," over the Center's rules and regulations, but also Congress literally incorporated by reference the entirety of the SafeSport Code within the ASA itself. 36 U.S.C. § 220541(b). As a result, the Center has repeatedly changed the federal rules and procedures governing private entities and private individuals within the Olympic Movement with no oversight from any governmental entity, including Congress, and these rules and regulations have the force and effect of federal statute. *Id.* With regard to the Center's enforcement authority, Congress again not only failed to provide any governmental oversight, but also provides that no entity, not even the federal courts, can question any adjudicative decision of the Center. In the ASA, Congress transformed the Center, a private entity, into a super entity that can write federal rules that have the force and effect of federal statutes without any of the protections of the APA or the legislative process, and it can investigate and enforce

life-altering decisions for hundreds of thousands of Americans with, as the Center argues, no Constitutional protections. Because the Constitution does not allow for a private entity to exercise such powers, the delegation of authority to the Center under the ASA is unconstitutional.

II. The District Court Erred in Dismissing the Due Process Counts on the Grounds that the Center, USOPC and USEF are not Governmental Actors.

The Complaint includes two claims alleging violations of the Due Process Clause of the Fifth Amendment: Count V, which asserts a facial challenge to the enforcement provisions of the ASA; and, Count VI, which alleges violations of individual Due Process rights.[4] The District Court dismissed both Due Process counts on the grounds that neither SafeSport, USEF, nor the USOPC are governmental actors. This ruling was error.

A. Count V of the Complaint states a claim upon which relief may be granted.

The ASA violates the Fifth Amendment Due Process Clause, which requires that "No person shall be … deprived of life, liberty or property, without due process of law." U.S. Const., Amend V. Since its passage in 1978, the ASA has provided

---

[4] The District Court characterized Counts V and VI as follows: "Count V (alleged against all Defendants) asserts that the Amateur Sport Act violates the Due Process Clause by failing to require a pre-determination hearing in SafeSport cases," and "Count VI (alleged against SafeSport only) claims that the SafeSport Code violates Plaintiff's due process rights." Appellants disagree with the characterizations of those Counts.

Participants in the Olympic Movement with the right to a hearing before a declaration of ineligibility. 36 U.S.C. § 220522(8). JA32. When Congress amended the ASA in 2018 to delegate authority to the Center, it required the Center to provide "fair notice and an opportunity to be heard" in 36 U.S.C. § 225041(a)(5) and didn't alter the right to a pre-determination hearing found in § 220522(8). JA32-JA33. Congress amended the ASA in 2020 to expressly require the Center to provide "procedural due process" in every action it takes against a participant, and again Congress did not alter the pre-determination hearing requirement in § 220522(8). JA33. Despite this language, the Center, as shown by its conduct and the SafeSport Code, has interpreted the ASA only to require a hearing *after* the Center renders a decision. If the Center is correct, then Congress is requiring the Center to deprive people of protected property and liberty interests without providing due process. Only if the statutory language requires a pre-deprivation "name clearing" hearing will the ASA's enforcement provisions comply with the Constitution.

As the ASA is interpreted and enforced by the Center, Congress has specifically mandated that participants be deprived of protected liberty and property interests without providing due process protections. In fact, the punishments required by the ASA are exclusively the deprivation of interests protected by the Due Process Clause. The ASA mandates that the Center publish the names of those "barred by the Center" on the World Wide Web and affect a change in the status of

a participant's eligibility. The ASA requires that the USOPC and USEF implement and follow the Center's policies and procedures, including enforcement of its decisions. 36 U.S.C. § 220541(a)(F)(i), 36 U.S.C. §220524, 36 U.S.C. §220527. As alleged in the Complaint, this action necessarily implicates a liberty interest protected under Fifth Amendment Due Process. "Where a person's good name, reputation, honor, or integrity is at stake *because of what the government is doing to him*, notice and an opportunity to be heard are essential." *Paul v. Davis*, 424 U.S. 693, 708 (1976) (Emphasis in original) (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). Under this principle, the government may not cause harm to a person's reputation while significantly altering the person's legal status without providing due process safeguards. *Id*. at 708-09. For example, in *Constantineau*, the Court reviewed an Ohio "posting" statute that permitted certain officials to forbid the sale of liquor to persons by "posting" a Notice in liquor stores without providing notice or a hearing. The Court found that "where the State attaches 'a badge of infamy' to the citizen, due process comes into play." (quoting *Wieman v. Updegraff*, 344 U.S. 183, 191 (1952). The *Paul* Court explained the *Constantineau* holding as follows:

> We think that the italicized language, "because of that the government is doing to him," refer[s] to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law—the right to purchase or obtain liquor in common with the rest of the citizenry. "Posting" therefore, significantly altered her status as a matter of law, and it was that alteration of legal status which, combined

> with the injury resulting from the defamation, justified the invocation
> of procedural safeguards.

*Paul v. Davis*, 424 U.S. 693, 708-09 (1976).

By requiring the Center to publish the names of participants on the World Wide Web, Congress is attaching a "badge of infamy" to any person whose name is posted. At the same time, the sanction by the Center deprives individuals of their rights previously held under state and federal law. The sanction significantly alters their status as eligible to participate, which is a right granted within the ASA, as well as their individual contractual rights with their respective NGB. JA13, 36 U.S.C. § 220522(7)-(8). See *Eberhardt v. Fairfax County Employees' Ret. Sys. Bd*., Civ. Act. No. 1:10-cv-771, *7 (E.D.Va. Mar. 30, 2012) (holding that statutory right "channeled by law" is a property interest protected by due process); *Thurston v. Roanoke School Bd*., 26 F. Supp. 2d 882, 885 (W.D.Va. 1998) (holding that a "continuing contract status [is] a property interest protected by the due process clause). As this Court has held, "[i]n situations like that at hand, the constitutional harm 'is not the defamation' itself; rather it is 'the denial of a hearing at which the [person] has the opportunity to refute the public charge.'" *Sciolino v. City of Newport News*, 480 F.3d 642, 649 (4th Cir. 2007) (*citing Cox v. N. Va. Transp. Comm'n*, 551 F.2d 555, 558 (4th Cir. 1976). Thus, under the Center's interpretation of the statutory language, Congress has required the Center to deprive participants of their protected liberty and property interests without providing a pre-determination "name clearing"

hearing, and that lack of a hearing violates Due Process in every case the Center adjudicates. In other words, the ASA meets the requirements of due process only if the language in the ASA requires a pre-determination "name clearing" hearing.

B.   Count VI of the Complaint states a claim upon which relief may be granted.

As a result of the broad grants of governmental authority delegated to the Center by Congress in the ASA, the Center's actions and decisions are subject to the Fifth Amendment's requirements of Due Process. "Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints." *Edmonson v. Leesville Concrete Co*., 500 U.S. 614, 620 (1991). In *Edmonson*, the Court set out the following test to determine whether a private party's actions should be deemed the actions of the state. "We asked first whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority; and second, whether the private party charged with the deprivation could be described in all fairness as a state actor." *Edmonson v. Leesville Concrete Co*., 500 U.S. 614, 620 (1991) (citing *Lugar v. Edmondson Oil Co.,* 457 U. S. 922 (1982).

As to the first issue, the constitutional deprivations in this case resulted from the exercise of the rights granted to, and duties imposed on, the Center by Congress

in the ASA. Like the use of the peremptory challenges by a private litigant at issue in *Edmonson*, all of the acts taken by the Center were taken pursuant to the authority granted by federal statute. See *Edmonson v. Leesville Concrete Co*., 500 U.S. 614, 621 (1991) ("Without this authorization, granted by an Act of Congress itself, Leesville would not have been able to engage in the alleged discriminatory acts."). Pursuant to the powers and jurisdiction granted by the ASA, the Center: promulgated its rules of conduct governing participants in the Olympic Movement; promulgated its policies and procedures for investigation; promulgated its policies and procedures for adjudication that did not include a pre-determination "name clearing" hearing; and, investigated and adjudicated the complaints against Appellants without providing a pre-deprivation hearing, and in the cases of Navarro and Giorgio without providing notice. JA12, JA20-JA23. Congress granted federal authority to the Center to take every action and to make every determination that resulted in the deprivation of liberty and property interests at issue in this case.

With regard to the second factor, the Center's actions should be deemed that of the state. This Court has cited four circumstances under which the Supreme Court has recognized a private entity can be deemed to be a state actor: "(1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and

exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen." *Debauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999). In the present case, the first three factors apply to the due process counts.

The Center performs traditionally and exclusively public functions. As previously argued herein, Congress has granted broad governmental functions to the Center under the ASA. The Center is charged with rulemaking, investigating, and adjudicating the conduct of citizens, all of which are traditionally and exclusively government functions. *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,* 53 F.4th 869, 872 (5th Cir. 2022); *State v. U.S.*, 62 F.4th 221, 231 (6th Cir. 2023). In fact, pursuant to the SafeSport Code, there does not have to be a nexus between the conduct the Center investigates and adjudicates and a person's participation in sport. As long as a person simply holds membership in an NGB, their conduct anywhere, anytime, in any context is subject to the jurisdiction of the Center. JA320. As a result of its investigations, the Center has the exclusive authority to change the legal status of Americans with no governmental oversight. These are traditionally and exclusively governmental functions that Congress has delegated to SafeSport.

The District Court erred by framing the Center's governmental functions based on the Supreme Court's description of the functions of the USOPC in *S. F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542-47 (1987). The

District Court reasoned that "[w]hile Congress made SafeSport independent from USOPC, SafeSport's functions still relate to 'the conduct [and] coordination of amateur sports,' which have 'always been performed by private entities.'" JA600-601. The act at issue in *SFAA* was the USOPC's enforcement of its right to prohibit certain commercial and promotional uses of the word "Olympic." *Id.* at 526-27. In contrast, the acts complained of in this case, which were mandated by Congress, include the exclusive jurisdiction of and control over private entities and citizens through investigation and adjudication of their conduct, *whether that conduct is connected to amateur sports or not.* JA320. Such actions are traditional governmental functions. The District Court erred in finding that the Center is simply operating as part of the USOPC's coordination and conduct of amateur sports.

Congress is also evading a clear constitutional duty by delegating governmental powers to the Center. As alleged in the Complaint, the ASA necessarily requires the deprivation of liberty and property interests protected by the Due Process Clause of the Fifth Amendment. Had Congress delegated these rulemaking and enforcement functions to a governmental entity, that entity would be required to provide due process protections, including a pre-deprivation hearing. Likewise, had Congress granted a governmental entity with sufficient oversight authority over the Center, that governmental entity would be required to provide due process protections. Instead, Congress has attempted to evade due process by

delegating the governmental functions to a private entity without any governmental oversight.

Finally, Congress has coerced the Center to violate the requirements of due process by mandating that the Center take specific unconstitutional actions under the law. As shown above, Congress has commanded the Center in the ASA to take actions that necessarily deprive property and liberty interests protected by the Fifth Amendment Due Process Clause. As a result, Congress has forced the Center, by statute, to deprive people of protected property and liberty interests without due process.

III.    Shaffer was not Required to Exhaust Administrative Remedies.

The District Court erred in dismissing Shaffer's claims for failing to exhaust her administrative remedies. There is no requirement for Shaffer to exhaust administrative remedies for her claims brought under the Constitution and seeking a judicial interpretation of federal statutes because the claims are not within the jurisdiction granted to the Center under the ASA. A litigant is not required to exhaust administrative remedies within an administrative agency for claims that are "entirely collateral to the substantive claims" at issue before the agency. *Mathews v. Eldridge*, 424 U.S. 319, 330-31 (1976) (denying agency's failure to exhaust administrative remedies defense for a constitutional claim alleging a violation of due process based on a failure to provide a pre-deprivation hearing). Thus, because Shaffer's due

process and statutory construction claims are collateral to the Center's eligibility decisions, there is no requirement that she exhaust administrative remedies.

In addition, there are several exceptions to the requirement that parties exhaust administrative remedies before seeking refuge in federal courts. These include those instances where (1) the dispute is a matter of statutory construction; (2) the utilization of administrative procedures would cause irreparable injuries; and (3) the resort to administrative procedures would be futile. *McDonald v. Centra*, 946 F.2d 1059, 1063-64 (4th Cir. 1991). All three exceptions apply to Shaffer's claims in this action. First, all of the claims in this case require statuory construction. Second, the only review made available to Shaffer by the Center was an arbitration proceeding at the cost of $5,600.00, which would have caused her the irreparable injury in the loss of $5,600.00. Finally, the arbitration proceeding offered by the Center would have been futile with regard to the relief she seeks in this action. Shaffer claims that the ASA and/or the Center violated her various constitutional and statutory rights because the Center makes a determination without first providing a hearing. The relief she seeks is a pre-determination hearing. The Center's post-determination arbitration proceeding cannot provide that relief.

IV.    The Complaint Alleges Article III Standing as to USOPC.

The District Court dismissed USOPC on the grounds that the Court did not have subject matter jurisdiction because the injuries to Navarro and Giorgio were not fairly traceable to actions of the USOPC. This was error.

The ASA obligates the USOPC to enforce the requirements and duties of NGBs, including the obligations and duties within the SafeSport Code. One of the USOPC's express duties set forth by Congress is to "ensure that each national governing body and the corporation enforces temporary measures and sanctions issued pursuant to the authority of the Center." 36 U.S.C. § 220505(d)(1)(C). Congress also set forth specific duties and requirements for NGBs in 36 U.S.C. §§ 220522 and 220524. Among these obligations, Congress requires that NGB's provide notice and a hearing before declaring a member ineligible. JA14, 36 U.S.C. § 220522(8). In addition, Congress mandated that the Center's "policies and procedures developed under subsection § 220541(a)(1)(C) shall apply as though they were incorporated in and made a part of section 220524 of this title." JA19-20, 36 U.S.C. § 220541(b). As a result, the SafeSport Code is incorporated as a whole into the statute that sets forth the duties of an NGB. JA20.

The ASA provides an administrative process through which the USOPC is given enforcement authority for the requirements of NGBs. If a member of an NGB believes that an NGB has violated 36 U.S.C. §§ 220522 or 220524, the member can

bring a complaint before the USOPC pursuant to 36 U.S.C. § 220527 seeking that the USOPC require the NGB to fulfill its obligations and duties mandated in the ASA, including the duties under the SafeSport Code. In the present case, Navarro and Giorgio filed a complaint with the USOPC under 36 U.S.C. § 220527 based on USEF's failure to provide both notice and a hearing, as required by § 220522(8), before they were declared ineligible. JA24. Despite the specific grant of authority to enforce this obligation of USEF in the ASA, the USOPC declined to hear their complaints on the grounds that it did not have jurisdiction to hear the complaint. JA52-53. Had the USOPC enforced the rights of Navarro and Giorgio to notice and a hearing before being ruled ineligible, neither of them would have needed to file this action. The USOPC's failure to comply with § 220527 in the face of an obvious violation of both §§ 220522(8) and 220524 (which incorporates the SafeSport Code as a whole) has caused, and continues to cause, the harm Navarro and Giorgio alleged in the Complaint.[5]

## CONCLUSION

For the foregoing reasons, the District Court's Order should be reversed, and this case remanded for further proceedings consistent with this Court's instructions including reinstatement of the state law claim in Count VII of the Complaint. 28

---

[5] It is undisputed that Navarro and Giorgio were not given notice prior to being banned.

U.S.C. § 1367; *Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009) *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 79 (2d Cir. 2003).


Respectfully Submitted

/s/Tamara L. Tucker
WILLIAM C. TUCKER
TUCKER LAW FIRM, PLC
690 Berkmar Circle
Charlottesville, Virginia 22901
(833) 388-2537
*Attorneys for Plaintiffs-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument on the matters briefed herein as they raise novel issues of law in a unique factual context. The issues are important and have the potential to affect a large number of individuals, in addition to Appellants. Thus, Appellants believe oral argument would be beneficial to the Court.


/s/Tamara L. Tucker
WILLIAM C. TUCKER
TUCKER LAW FIRM, PLC
690 Berkmar Circle
Charlottesville, Virginia 22901
(833) 388-2537
*Attorneys for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 25-1150          **Caption:** Thomas Navarro v. United States Center for SafeSport

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ___8013___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 2016 [*identify word processing program*] in
14 point Times New Roman [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Tamara L. Tucker

Party Name Appellant

Dated: 3/26/2025

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2025, I caused this Amended Appellants brief to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record as registered CM/ECF users.

/s/ Tamara L. Tucker
*Counsel for Appellants*